UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | : | |
|---|---|---|
| AUDLEY REID | : | |
| Petitioner, | : | Civil Action No. 25-CV-0904 (RER) (JRC) |
| -against- | : | |
| NINA REMEKIE, | : | |
| Respondent. | : | |

**RESPONDENT'S PRE-TRIAL MEMORANDUM OF LAW**

Respondent respectfully submits this pre-trial memorandum of law pursuant to Order dated April 25, 2024.

**Introduction**

This memorandum addresses two key issues under the Hague Convention on the Civil Aspects of International Child Abduction (the Hague Convention) and its implementing legislation, the International Child Abduction Remedies Act (ICARA), as interpreted by the Second Circuit. *Matovski v. Matovski*, 2007 U.S. Dist. LEXIS 65519 (S.D.N.Y. 2007). First, the Petitioner has failed to establish that the children's habitual residence was in Jamaica, as the parties agreed that the stay in Jamaica was temporary and on a trial basis. Second, the Respondent has demonstrated that returning the children to Jamaica would pose a grave risk of harm under Article 13(b) of the Hague Convention due to the petitioners physical and emotional abuse of the mother. *Poix v. Santana*, 2022 U.S. Dist. LEXIS 189263 (S.D.N.Y. 2002); *Rubio v. Castro*, 2019 U.S. Dist. LEXIS 178261 (E.D.N.Y. 2019).

## I. The Petitioner Has Failed to Establish the Children's Habitual Residence in Jamaica

Under the Hague Convention, the determination of a child's habitual residence is a threshold issue in resolving claims of wrongful removal or retention. *Lomanto v. Agbelusi*, 2024 U.S. App. LEXIS 16640 (2d Cir. 2024), *Pozniak v. Shwartsman*, 2021 U.S. Dist. LEXIS 48599 (E.D.N.Y. 2021). The Second Circuit has held that a child's habitual residence is determined by examining the shared intent of the parents at the latest time their intent was shared, as well as the child's acclimatization to the location in question. *Grano v. Martin*, 443 F. Supp. 3d 510 (S.D.N.Y. 2020). A new habitual residence is established only if the parents formed a settled intention to abandon the prior habitual residence and the child has acclimatized to the new location. *Poliero v. Centenaro*, 373 Fed. Appx. 102 (2d Cir. 2010).

In this case, the Petitioner has failed to establish that the children's habitual residence was in Jamaica. The parties agreed that the stay in Jamaica was temporary and on a trial basis, which negates any settled intention to abandon the prior habitual residence. The Second Circuit has emphasized that the shared intent of the parents is the primary factor in determining habitual residence, and a temporary arrangement does not suffice to establish a new habitual residence. *Radu v. Toader*, 805 F. Supp. 2d 1 (E.D.N.Y. 2011); *Haimdas v. Haimdas*, 720 F. Supp. 2d 183 (E.D.N.Y. 2010). Simply stated, physical presence alone is insufficient to establish habitual residence, particularly in the absence of shared parental intent.

In particular, the evidence at trial will conclusively establish that the parties' children, *to wit,* Ava Francella Reid, daughter, born August 7, 2021 ("Ava") and Amir Ashton-Anton Reid, son, born February 1, 2023 ("Amir"), were born in New York.  The children resided exclusively in New York from their birth until May 2, 2023, when the Respondent brought the children to Jamaica while she was on her maternity, with the expectation that they would return to New York

for the start of the 2023-2024 school year. Respondent returned to New York on August 26, 2023, and went back to work as a social worker at Riverton Street Charter School in or around the last week of August, 2023.

Respondent and the children travelled back to Jamaica on October 5, 2023 to attend a funeral for the Petitioner's business partner. The Respondent left Jamaica with the children four (4) days later, on October 9, 2023. Respondent and the children visited Jamaica again in December of 2023, at which point the Petitioner asked that Respondent to allow the children to remain in Jamaica so that he could bond with him. At this point in time, the Petitioner and Respondent were discussing whether the Respondent and children would relocate to Jamaica and the possibility of the Respondent resigning from her job in New York. The communications between the parties during this time make clear that the Respondent was <u>considering</u> the move to Jamaica but has serious reservations about uprooting her whole life and moving to Jamaica with the children. Notably, the Respondent voiced her concern that the relationship between her and the Respondent and her worry that if she moved to Jamaica, she would be fully dependent on him. None of the emails being offered by the Petitioner evidence a clear agreement to relocate to Jamaica. In fact, just the opposite.

Respondent ultimately agreed to allow the children to remain in Jamaica temporarily so that they could bond with the Petitioner. On January 5, 2024, prior to returning to New York, the Respondent sent an email to the Petitioner outlining two plans moving forwards. "Plan A" was conditioned on the Respondent being "contacted in mid-January regarding a remote position." This condition precedent did not occur. "Plan B" necessitated additional discussions in the event that the Respondent did not obtain the position in mid-January. Notably, this "Plan B" did <u>not</u> include an agreement that the children would permanently relocate to Jamaica.

Respondent arrived in New York on January 8, 2024, and went back to work after the Christmas holiday ended on January 9, 2024. She then returned to Jamaica on or about January 31, 2024, at which point she discovered that the children's passports were missing. The Respondent back and forth to Jamaica over the next several months while the children were still in Jamaica attending school. Respondent did not think it prudent to withdraw the children from school mid semester and continued discussions with the Respondent about the future of their family.

In mid-February, the Respondent took a leave of absence from the Riverton Street Charter School and accepted a remote position, enabling her to remain in Jamaica until the parties came to an ultimate resolution as to the future of their relationship. During this time period, the Respondent was actively seeking a return of the children's passport, reaching out to the U.S. Embassy in April of 2024. In addition, the Respondent was subjected to a pattern of repeated emotional abuse, often in the presence of the children, culminating in the Petitioner physically attacking the Respondent on December 26, 2024. This attack was witnessed by the children.

Ultimately, the Respondent left Jamaica with the children on January 24, 2025 to avoid further exposing the children to Petitioner's patter of violence and intimidation. It should be highlighted that the <u>Petitioner</u> readily admitted to Dr. Favaro that the relationship between him and the Respondent was "highly conflicted" and that they would regularly attend counseling, as early as 2021, <u>prior</u> to the Respondent's travel to Jamaica with the children in May of 2023. This statement supports the Respondent's position in this case.

In light of the foregoing, it is respectfully submitted that the Petitioner cannot establish his *prima facie* entitlement to relief under the Hague Convention as the parties' temporary

arrangement does not suffice to establish a new habitual residence. *Radu, supra.*; *Haimdas, supra.*

## II. The Respondent Has Established a Grave Risk of Harm Under Article 13(b)

Article 13(b) of the Hague Convention provides an exception to the return of a child if the respondent establishes by clear and convincing evidence that returning the child would expose them to a grave risk of physical or psychological harm or otherwise place them in an intolerable situation. *Rubio v. Castro*, 2019 U.S. Dist. LEXIS 178261 (E.D.N.Y. 2019). Psychological harm to a parent (*i.e.* the Respondent herein) can be relevant to the grave risk analysis if it directly impacts the child. Where, as here, the Petitioner endures significant psychological trauma, especially in the form of domestic violence, the effects of that trauma may extend to the child either through direct exposure or indirect emotional consequences. *Abdollah Naghash Souratgar v. Lee Jen Fair,* 2012 U.S.Dist LEXIS 181989 (S.D.N.Y. 2012); *Velozny v. Velozny*, 550 F. Supp.3d 4 (S.D.N.Y. 2021).

In the case at bar, the Respondent has met this burden by demonstrating that Petitioner physically and emotionally abused her in the presence of the children, thereby constituting a grave risk of harm to the children. *Castro, supra.* The Second Circuit has recognized that domestic abuse directed at a parent, when witnessed by the child, can constitute a grave risk of harm under Article 13(b). Evidence of spousal abuse is relevant under Article 13(b) if it seriously endangers the child, either directly or through exposure to the abusive environment. *Abdollah Naghash Souratgar supra*; *Velozny, supra.*  Accordingly, the Petitioners abuse of the Respondent has created an intolerable situation that would place the children at grave risk of psychological harm if they were returned to Jamaica, satisfying the heightened evidentiary standard required under Article 13(b), and asks that this Court deny the Petitioner's request to have the children returned to Jamaica.

Furthermore, even in cases where the child does not directly witness the abuse, the parent's impaired mental health may affect her capacity to provide adequate emotional support, security, and stability, thereby creating an intolerable situation for the child. *Abdollah Naghash Souratgar supra*; *Velozny, supra.* Inarguably, the parent-child relationship, particularly with a primary caregiver, is a critical factor in determining the risk to a child's well-being. It follows that the Respondent's psychological harm can have cascading effects on the child's mental health, development, and overall sense of safety, particularly if the circumstances involve persistent abuse or coercive control.

While it is presumed that the Petitioner will argue that the harm can be minimized by having the parties live in separate residences, this would not abate the harm presented nor is it a viable solution. The Respondent has no relatives in Jamaica, no support system and no job. She is a stranger to that country but for her ties to the Respondent and her brief visits there with her children.

Moreover, the parties have children in common. Invariably, they will have to interact with each other. Accordingly, there is a significant probability that the children will continue to be exposed to the trauma associated with the parties conflicted relationship and the possibility that they will witness additional incidents of physical abuse.  Notably, Respondent's expert, Dr. Jacqueline C. Campbell, is expected to testify that the Respondent is at "severe danger" of being killed by her ex-husband.

## Conclusion

It is respectfully submitted that the Petitioner has failed to establish that the children's habitual residence was in Jamaica, as the parties agreed that the stay in Jamaica was temporary and on a trial basis. Additionally, the Respondent will demonstrate that returning the children to

Jamaica would pose a grave risk of harm under Article 13(b) of the Hague Convention due to the Petitioner's physical and emotional abuse.

                                          Respectfully submitted,

**BARROWS LEVY PLLC**

By: *Michael C. Barrows*

Michael C. Barrows, Esq. (MCB5916)
*Attorneys for Respondent*
100 Quentin Roosevelt Blvd, Ste 208
Garden City, New York 11530
(516) 744-1880 Tel.
(516) 744-1881 Fax
mbarrows@barrowslevy.com