UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

№ 25-CV-0904 (RER) (JRC)

———————————

AUDLEY REID

versus

NINA REMEKIE

———————————

**MEMORANDUM & ORDER**

July 17, 2025

———————————

**RAMÓN E. REYES, JR., District Judge:**

Before the Court is respondent Nina Remekie's ("Respondent") motion to stay (ECF No. 126 ("Mot.")) two of the Court's orders: first, the Court's order granting the petition for the return of the parties' two minor children, A.A.F.R. and A.A.-A.R. (the "Children"), to Jamaica pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Hague Convention" or "Convention"), Oct. 25, 1980, T.I.A.S. No. 11,670, 1988 WL 411501 (July 1, 1988), and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001 *et seq.* (ECF No. 115); second, the Court's order of return directing that the Children be returned to Jamaica on July 18, 2025 (ECF No. 123).

For the reasons stated below, the Court DENIES the motion but issues an administrative stay until July 22, 2025, to allow Respondent to seek a stay from the United States Court of Appeals for the Second Circuit.

## BACKGROUND

Petitioner Audley Reid ("Petitioner") filed his Verified Petition for the Return of Children to Jamaica on February 18, 2025, alleging that Respondent had wrongfully removed the Children from Jamaica to New York on January 24, 2025. (ECF No. 1). After a three-day bench trial, during which the Court heard testimony from fact and expert witnesses for both parties and received extensive evidence (*see* ECF Nos. 44, 47, 49), on June 26, 2025, the Court issued findings of fact and conclusions of law granting the petition and ordering the Children to be returned to Jamaica (ECF No. 115). The Clerk of Court issued a judgment in favor of Petitioner. (ECF No. 116). After an extension, on July 14, 2025, each party filed a proposed order of return. (ECF Nos. 120, 121). The following day the Court issued an order of return mandating that the Children be returned to Jamaica no later than July 18, 2025. (ECF No. 123). On July 16, 2025, Respondent filed a letter motion to stay, requesting that the Court "stay the proceedings, including the Order directing that the [C]hildren relocate to Jamaica on July 18, 2025, pending the resolution of an expedited appeal to the Second Circuit," or, in the alternative "grant an administrative stay to allow [Respondent] to seek a stay from the Second Circuit." (Mot. at 2). Petitioner filed a response in opposition to the motion on July 17, 2025. (ECF No. 127 ("Opp.")).

## DISCUSSION

A losing party in a Hague Convention case is not "guaranteed" a stay pending appeal as a matter of right. *Chafin v. Chafin*, 568 U.S. 165, 179 (2013). Rather, "the party requesting it must show that the circumstances of the case justify the exercise of judicial

discretion." *DiMartile v. Hochul*, 80 F.4th 443, 456 (2d Cir. 2023). When assessing a stay request, a court must consider the "traditional stay factors":

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Chafin*, 568 U.S. at 179 (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The first two factors "are the most critical," and "both must be satisfied." *DiMartile*, 80 F.4th at 456 (first quoting *Nken*, 556 U.S. at 434). A court must not presume a stay is merited in every case, in part because nonmeritorious appeals "undermine the goal of prompt return"; rather each case must receive "individualized treatment" tailored and responsive to its specific facts. *See Chafin*, 568 U.S. at 179.

Here, Respondent has not met her burden to show that a stay of the June 26th order granting the petition or the July 15th order of return is justified. She has failed to establish that any of the four factors weigh in favor of a stay.

I.  Factor 1: Success on the Merits

"To satisfy the 'success on the merits' factor, the moving party must show that his chance of success on the merits is more than a 'mere possibility.'" *DiMartile*, 80 F.4th at 456 (first quoting *Nken*, 556 U.S. at 434).

Respondent lays out several issues for appeal, including (1) whether the parties had a conditional agreement in or around June 2024 regarding where Respondent and the Children would live, such that the Children's habitual residence remained in the United States; (2) whether the Court gave "undue weight" to the Children's connections to Jamaica, and insufficient weight to the parents' intentions and actions, considering the

3

Children's young ages; and (3) whether the Court erred in finding no pattern of abuse endangering the children. (Mot. at 1–2).

The Court has already considered—and rejected—all of these arguments. After a three-day, fact-intensive evidentiary hearing where the Court heart testimony from numerous witnesses and reviewed thousands of pages of evidence, the Court determined that Petitioner had carried his burden of establishing the prima facie case by a preponderance of the evidence, including that Jamaica is the Children's habitual residence, and that Respondent had failed to carry her burden of establishing by clear and convincing evidence that the Children would face a grave risk of harm upon their return to Jamaica. (*See* ECF No. 115). Appellate review of all relevant issues—including the first-instance habitual-residence determination, and the factual findings regarding the grave risk of harm defense—would be under the deferential clear error standard. *See Monasky v. Taglieri*, 589 U.S. 68, 71 (2020) (habitual residence); *Mota v. Castillo*, 692 F.3d 108, 111 (2d Cir. 2012) (grave risk of harm).

Given Respondent has only a slim chance of successfully demonstrating that the Court's factual findings were "clear error," she is unlikely to succeed on the merits. Thus, this first factor weighs against a stay.

II.     Factors 2 & 3: Injury

In the Hague Convention context, courts consider the injury to the children when considering the second factor, injury to the movant, "and/or" the third factor, injury to the non-movant. *Eidem v. Eidem*, No. 18 Civ. 6153 (RJS), 2019 WL 13243081, at *2 (S.D.N.Y. May 28, 2019); *Royal Borough of Kensington & Chelsea v. Bafna-Louis*, No.

4

22 Civ. 8303 (PKC), 2023 WL 3976663, at *2 (S.D.N.Y. June 13, 2023); *see also Chafin*, 568 U.S. at 179.

Respondent argues that there is enormous potential for irreparable harm to both herself and the Children because, after the Children are returned to Jamaica, "re-returning to the United States following a successful appeal may well be very difficult, if not impossible." (Mot. at 2 (citing *Chafin*, 568 U.S. at 176)). Respondent also argues that the Children's lives in New York are "stable"—they attend daycare and day camp in New York now, have friends and relatives, and are with Respondent, "their primary caregiver"—and that stability "should not be disrupted while the appeal is pending." (*Id.*)

What Respondent fails to consider is that her actions, wrongfully removing the Children from Jamaica, are what have created this new-found "stability." As the Court established in detail in its findings of fact and conclusions of law, the Children had a stable life *in Jamaica*, which Respondent disrupted with removal. (*See generally* ECF No. 115). "[A] removing parent must not be allowed to abduct a child and then—when brought to court—complain that the child has grown used to the surroundings to which they were abducted. Under the logic of the [Hague] Convention, it is the abduction that causes the pangs of subsequent return." *Saada v. Golan*, No. 18-CV-5292 (AMD) (RML), 2021 WL 1176372, at *7 (E.D.N.Y. Mar. 29, 2021) (second alteration in original) (quoting *Lukic v. Elezovic*, No. 20-CV-3110 (ARR) (LB), 2021 WL 804384, at *3 (E.D.N.Y. Mar. 3, 2021)), *aff'd*, No. 21-876, 2021 WL 4824129 (2d Cir. Oct. 18, 2021). Respondent cannot point to a situation that she created as proof of irreparable harm to herself and the Children. Moreover, Respondent's fear that the Children might not be "re-returned" if she succeeds on appeal is conclusory: Petitioner has not indicated that he would violate any order of

5

any court adjudicating this matter, and his actions in this case have not shown otherwise. Considered in the proper context, the second factor weighs against a stay.

By contrast, Petitioner himself faces irreparable harm with each passing day of delay. As Petitioner's opposition letter states, after the Court granted his petition, Respondent "unilaterally cut off all video calls between Petitioner and the Children," which had been "a valuable means of communication" since the removal. (Opp. at 5). He risks losing closeness and trust with his children. At their young age, they risk losing formative memories with him, as well as time they could have spent readjusting back to their life in Jamaica. *See Tatari v. Durust*, No. 24-CV-6930 (CBA) (LKE), 2025 WL 416879, at *1 (E.D.N.Y. Feb. 6, 2025); *Morales v. Escobar*, No. 24-CV-7951 (NCM) (TAM), 2025 WL 1070234, at *4 (E.D.N.Y. Apr. 9, 2025); *Chafin*, 568 U.S. at 183. Courts have recognized that, if a Hague Convention petitioner succeeds on the merits, issuing a stay would cause the petitioner to "continue to suffer from the very harm that led to this lawsuit—the absence of [the child] from [p]etitioner's life." *Nicolson v. Pappalardo*, 685 F. Supp. 2d 142, 145–46 (D. Maine Feb. 8, 2010); *see also Rehder v. Rehder*, No. C14-1242RAJ, 2014 WL 7240662, at *7 (W.D. Wash. Dec. 19, 2014). While Petitioner's harm is certainly not the only factor a court should consider, here it, and the harm to the Children, weighs heavily against a stay.

III.    Factor 4: Public Interest

In Hague Convention cases, the public interest "is primarily defined by the treaty itself, the express purpose of which is to secure the prompt return of children wrongfully removed to or retained in any Contracting State." *Bafna-Louis*, 2023 WL 3976663, at *3 (quoting *Poix v. Santana*, No. 22 Civ. 4980 (JPC), 2022 WL 16751915, at *1 (S.D.N.Y.

6

Nov. 7, 2022)); 22 U.S.C. § 9001(a)(4); *see also Tereshchenko v. Karimi*, No. 23 Civ. 2006 (DLC), 2024 WL 195547, at *5 (S.D.N.Y. Jan. 18, 2024) ("American parents and their children benefit from this country's participation in and vigorous enforcement of the Hague Convention."). As with the other factors, this factor weighs against a stay.

## **CONCLUSION**

For the reasons set forth above, Respondent's motion to stay (ECF No. 126) is DENIED. The Court nevertheless issues an administrative stay until July 22, 2025, to allow Respondent to seek a stay from the United States Court of Appeals for the Second Circuit. Barring such a stay, Respondent shall submit an updated proposed order of return, including precise travel details, by 12:00 p.m. on July 23, 2025. Respondent is directed to confer with Petitioner and, to the extent possible, come to an agreement as to the proposed travel details. The Children shall be returned to Jamaica no later than July 28, 2025.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.
RAMÓN E. REYES, JR.
United States District Judge

Dated: July 17, 2025
　　　Brooklyn, NY