UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 25-CV-0904 (RER) (JRC)
_____

AUDLEY REID

VERSUS

NINA REMEKIE
_____

**MEMORANDUM & ORDER**
_____

**RAMÓN E. REYES, JR., District Judge:**

Following the Court's order directing the return of the minor children to Jamaica, petitioner Audley Reid ("Petitioner") moves for an award of necessary expenses pursuant to the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9007(b)(3). Petitioner seeks reimbursement for legal fees, costs, and expenses incurred in prosecuting this action to secure the return of his children under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention"). Respondent Nina Remekie ("Respondent") opposes the motion, arguing that any award would be clearly inappropriate given her financial circumstances and the nature of the case. For the reasons set forth below, Petitioner's motion is granted in part, subject to the equitable reductions detailed herein.

**BACKGROUND**

On February 18, 2025, Petitioner commenced this action against Respondent pursuant to the Convention and ICARA, 22 U.S.C. § 9001 *et seq.* (ECF No. 1). Petitioner

sought the return of the parties' two minor children to Jamaica, alleging that Respondent had wrongfully removed them to the United States in January 2025. (*Id.*)

The Court conducted a bench trial from May 1 through May 6, 2025. (ECF No. 49). During the proceedings, the Court heard testimony from both parties, several fact witnesses, and two expert witnesses regarding the psychological impact of a return order and allegations of domestic violence. (*Id.*) On June 26, 2025, the Court issued a Memorandum and Order granting the petition and directing the return of the children to Jamaica. *See Reid v. Remekie*, No. 25-CV-0904 (RER) (JRC), 2025 WL 1769364 (E.D.N.Y. June 26, 2025).

In that Order, the Court made several relevant factual findings. First, the Court determined that the children's habitual residence was Jamaica, as they had resided there for a full year prior to their removal, establishing settled purpose and community integration. *Id.* at *1. Consequently, the Court found that Respondent's removal of the children on January 4, 2025, was unilateral and breached Petitioner's rights of custody under Jamaican law. *Id.* at *13. The Court further rejected Respondent's defense that returning the children would expose them to a "grave risk" of physical or psychological harm under Article 13(b) of the Convention. *Id.* at *10. The Court also found that Petitioner had engaged in an act of physical aggression on December 26, 2024. *Id.* at *4.

On July 14, 2025, Petitioner moved for reimbursement of his attorneys' fees and the costs paid by his attorneys on his behalf. (ECF No. 122). Respondent filed her opposition to the motion on July 28, 2025. (ECF No. 136). Petitioner's motion became fully submitted on August 4, 2025. (ECF No. 140). Petitioner seeks reimbursement in the total amount of $152,522.58. (ECF No. 122 at 23).

**DISCUSSION**

I.      Petitioner is Presumptively Entitled to Necessary Expenses Because Respondent Failed to Establish That an Award Would Be Clearly Inappropriate

The Convention provides that "[u]pon ordering the return of a child or issuing an order concerning rights of access under this Convention, the judicial or administrative authorities may, where appropriate, direct the person who removed or retained the child . . . to pay necessary expenses incurred by . . . the applicant." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (citing Hague Convention, art. 26 (emphasis supplied)). These "necessary expenses" may include "travel expenses, any costs incurred or payments made for locating the child, the costs of legal representation of the applicant, and those of returning the child." *Id.* Under ICARA, the Court "shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner . . . unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3).

Section 9007(b)(3) shifts the burden to respondent to show why an award of "necessary expenses" would be "clearly inappropriate." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (citations omitted). The Second Circuit has held that "a prevailing petitioner in a return action is presumptively entitled to necessary costs, subject to the application of equitable principles by the district court." *Ozaltin*, 708 F.3d at 375 (emphasis added). "Generally, in determining whether expenses are 'clearly inappropriate,' courts have considered the degree to which the petitioner bears responsibility for the circumstances giving rise to the fees and costs associated with a petition." *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 79 (2d Cir. 2016). Respondent argues that any fee award would be "clearly inappropriate" for two reasons: (1) she acted in good faith with a "colorable" legal defense; and (2) she faces significant

3

financial hardship. First, Respondent contends that fee-shifting is intended to punish bad actors, not parents who raise genuine legal questions. She asserts that her Article 13(b) defense and her contest of habitual residence were made in good faith, involving complex facts regarding dual citizenship and shared decision-making. Second, Respondent argues that she is under significant financial strain as a single mother employed as a school social worker, and that a large fee award would cause her financial ruin.

The Court finds that Respondent has failed to meet the high burden required to demonstrate that no fee award should be issued.

First, while the Court credits that Respondent did not conceal the children, the "clearly inappropriate" exception is narrow.

In *Ozaltin*, a mother removed her children from Turkey to the United States, an act the district court found wrongful under the Convention. However, the Second Circuit vacated the district court's award of full attorneys' fees, holding that such an award was "clearly inappropriate" given the specific factual context. *Id.* at 375. The Court found that the mother had a "reasonable basis" for believing her actions were lawful because the Turkish courts had issued orders implying she could reside with the children in the United States. Specifically, a Turkish family court had granted the father visitation rights "if he goes to the USA," and later ordered the father to return the children's passports so they could travel to America. *Id.* at 376. Although the mother's mistake of law was not a defense to the return of the children, the Second Circuit held it was a relevant equitable factor in determining costs. *Id.* The Circuit emphasized that the mother had not engaged in forum shopping or sought to evade jurisdiction; to the contrary, she had consistently submitted to the Turkish courts. *Id.* Furthermore, the Circuit noted that the petitioner-

4

father had engaged in tactical maneuvering which unnecessarily increased the cost of litigation. *Id.* at 377.

Here, however, the facts differ materially from the unique circumstances in *Ozaltin*. Unlike the mother in *Ozaltin*, Respondent here acted unilaterally. There was no ambiguity created by a Jamaican court or conflicting judicial guidance that would provide an objective reasonable basis for Respondent's belief that she could permanently remove the children without Petitioner's consent. Extending the *Ozaltin* exception to this case— where a parent simply misjudges the legal strength of their habitual residence claim— would effectively nullify the fee-shifting provision of ICARA. Consequently, Respondent's unilateral error does not render the award of fees "clearly inappropriate." Second, to sustain a defense of financial hardship sufficient to defeat a statutory fee award entirely, a respondent must provide concrete documentation of their financial status. *See Tereshchenko v. Karimi*, No. 23 Civ. 2006 (DLC), 2024 WL 3342759, at *4 (S.D.N.Y. July 9, 2024) ("While a court may properly consider a party's inability to pay, the respondent has offered no evidence of such an inability. She has provided no financial statements or other evidence of financial hardship, apart from her testimony that she was forced to close her business in Ukraine when the war there began.") Here, Respondent has submitted no sworn affidavits regarding her finances, no tax returns, and no bank statements. Instead, she relies on the assertions of her counsel in a memorandum of law. (ECF No. 136 at 2). Furthermore, the record indicates Respondent has a stable position as a school social worker and lives rent-free with her parents. (*Id.*) While the Court credits that her resources are likely limited compared with Petitioner's, she has not demonstrated the kind of total indigence that would render a fee award inequitable ab initio.

Because Respondent has failed to substantiate her claims of financial ruin with evidentiary proof, she has not met the statutory threshold to render a fee award "clearly inappropriate." Liability for Petitioner's necessary expenses is therefore established.

II.     The Lodestar Method Yields a Presumptively Reasonable Fee, Subject to Discretionary Adjustment

   A. Legal Framework

Both the Second Circuit and the Supreme Court have held that "the lodestar [method]—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citations omitted); *see also Tereshchenko v. Karimi*, No. 23 Civ. 2006 (DLC), 2024 WL 3342759, at *2 (S.D.N.Y. July 9, 2024).

Under the lodestar method, the Court multiplies the number of reasonable hours expended by a reasonable hourly rate. In determining what is "reasonable," a district court's discretion should be guided by the following factors:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorneys' customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Sanguineti v. Boqvist*, No. 15 Civ. 3159 (PKC), 2016 WL 1466552, at *2 (S.D.N.Y. Apr. 14, 2016) (citations omitted).

   B. Hourly Rate

Petitioner requests fees based on the work of a legal team comprised of two partners, one associate, and three paralegals. Petitioner requests an hourly rate of $750

for lead counsel Richard Min. Mr. Min establishes his standing as a highly specialized expert in international child abduction litigation. Practicing since 2008, he has litigated or consulted on over sixty Hague Convention cases across nearly twenty jurisdictions, acting as lead trial counsel in at least thirty-five trials and arguing seven appeals before the Second Circuit. Petitioner also requests an hourly rate of $600 for Michael Banuchis, citing his fifteen years of experience and extensive work on Hague Convention matters.

In *Tereshchenko*, the court conducted a survey of Hague Convention fee awards and observed that "[c]ourts in the Southern District of New York have not awarded more than $425 per hour to attorneys in Hague Convention cases." *Id.* at *3. Relying on this ceiling, the court capped Mr. Min's rate at $425 per hour and Mr. Banuchis's rate at $325 per hour. *Id.* The decision was grounded in several prior holdings within the Circuit. *See Webster-Colquhoun v. Colquhoun*, No. 21 Civ. 7101 (KMK), 2022 WL 2866470, at *5–6 (S.D.N.Y. July 21, 2022) (finding reasonable hourly rates of $425 for Mr. Min, $325 for Mr. Banuchis, and $200 for a junior associate); *Grano v. Martin*, No. 19 Civ. 6970 (CS), 2021 WL 3500164, at *3 (S.D.N.Y. Aug. 9, 2021) (approving rate of $425 per hour for attorney with forty years of practice and experience in "hundreds" of Hague Convention cases, and $400 per hour for forty-year practitioner with limited Hague Convention experience); *Nissim v. Kirsh*, No. 18 Civ. 11520 (ALC), 2020 WL 3496988, at *3 (S.D.N.Y. June 29, 2020) (awarding $425 per hour to counsel with thirty years of specialized Hague Convention experience).

Applying these factors, the Court finds the requested rates significantly exceed the prevailing market standards in this Circuit. Despite Mr. Min's qualifications, it is unreasonable to increase his hourly rate by 76%—from the $425 awarded in

*Tereshchenko* in 2024 to the requested $750 in 2025. Similarly, for Mr. Banuchis, an 85% increase from $325 to $600 over the same period is unwarranted. However, accounting for inflation and the accrual of additional expertise since *Tereshchenko*, the Court finds a rate of $500 per hour for Mr. Min and $375 per hour for Mr. Banuchis to be reasonable.

Regarding the junior legal staff, Petitioner requests $375 per hour for a junior associate and rates ranging from $225 to $250 per hour for three paralegals. In *Tereshchenko*, the court found that "[a] billing rate of $200 per hour is appropriate for the second associate . . . [and] a rate of $129 per hour is reasonable for a paralegal." *See Tereshchenko*, 2024 WL 3342759, at *3. Just as with the senior attorneys, the Court finds the magnitude of the fee increase unjustified. It is unreasonable to increase the associate rates by 88% (from $200 to $375) and the paralegal rates by approximately 75% to 94% (from $129 to $225–$250) over a period of less than three years. Therefore, the Court reduces the associates' rates to $250 per hour and the paralegals' rates to $125 per hour.

C. <u>Hours Expended</u>

Having determined the reasonable hourly rates, the Court next assesses the reasonableness of the hours expended. In determining the reasonable number of hours spent on a case, a court may exclude "documented hours that are excessive, redundant, or otherwise unnecessary." *Raja v. Burns*, 43 F.4th 80, 87 (2d Cir. 2022) (citation omitted). The Court may also "decrease the total award from the claimed amount because of vagueness, inconsistencies, and other deficiencies in the billing records" or "apply an across-the-board reduction to account for time spent on clerical tasks." *Id.*

Petitioner submits billing records documenting a total of 361.6 hours expended on this litigation. These hours are allocated among the legal team as follows: Partner Richard

8

Min billed 58.3 hours, Senior Counsel Michael Banuchis billed 56.1 hours, and the junior associate billed 114.5 hours. (ECF No. 122-1 at 4–5). The records also account for paralegal support, totaling 132.6 hours across three individuals. (*Id.*)

The Court finds the total time expended to be reasonable, given the complexity of the litigation. The staffing of the case reflects appropriate delegation of work. Unlike cases where billing is "top-heavy" with partner time, here, the majority of the work (approximately 68%) was performed by the junior associate and paralegals at lower billing rates. Two partners billed a combined 114.4 hours, while delegating research and document management to support staff. This efficiency is highlighted when compared to *Tereshchenko*, a similar Hague Convention matter handled by the same firm. In *Tereshchenko*, the court approved a total of 658.53 hours, finding that amount reasonable for a case involving evidentiary hearings and appellate defense. *See Tereshchenko*, 2024 WL 3342759, at *4.

Here, Petitioner achieved a successful result after a trial with significantly fewer hours than were approved in *Tereshchenko*. The billing records do not reflect excessive, redundant, or vague entries. Accordingly, the Court accepts the 361.6 hours as reasonable and will apply the adjusted hourly rates determined supra to this total.

D. Costs and Expenses

Under ICARA, the Court is mandated to order the respondent to pay "necessary expenses" incurred by the petitioner. 22 U.S.C. § 9007(b)(3). Additionally, a prevailing party may recover costs under 28 U.S.C. § 1920, which authorizes the taxation of fees for the clerk, transcripts, printing, and making copies of materials "necessarily obtained

for use in the case." *See Tereshchenko v. Karimi*, No. 23 Civ. 2006 (DLC), 2024 WL 3342759, at *5 (S.D.N.Y. July 9, 2024).

Petitioner seeks reimbursement for administrative costs as well as substantive expenses related to experts and travel, totaling $26,490.20. The Court has reviewed the itemization submitted by counsel and finds these expenses to be reasonable and necessary for the effective prosecution of this action.

**a. Docket Fees:** Petitioner requests $405.00 for the filing fee required to commence this action. Docket fees are explicitly taxable under 28 U.S.C. § 1920(5).

**b. Transcript Costs:** Petitioner requests $4,192.00 for depositions and trial transcripts. The Court finds these transcripts were necessarily obtained for use in the case given the complexity of the factual issues and the need to prepare detailed Proposed Findings of Fact and Conclusions of Law.

**c. Copying Costs:** Petitioner requests $1,235.83 for copying costs, including the production of three binders of trial exhibits. These materials, particularly the voluminous printed WhatsApp correspondence used to impeach Respondent's claims, were necessary to conduct the in-person trial effectively.

**d. Forensic Expert Fees:** Petitioner seeks $15,000.00 for the retainer of Dr. Favaro, a forensic expert. Given the Respondent's assertion of a "grave risk" defense under Article 13(b), the retention of a forensic expert was a necessity to assist the Court in evaluating the psychological impact of return on the children.

**e. Visitation Supervision:** Petitioner requests $3,675.00 for the costs of supervised visitation facilitated by Dr. Weld ($2,400.00) and Ms. Riccio ($1,275.00). These costs were incurred to ensure Petitioner's safe access to the children during the

pendency of this action and are recoverable as necessary expenses incurred "on behalf of the petitioner" to exercise rights under the Convention.

**f. Travel Expenses:** Petitioner requests $1,982.37 for costs associated with his travel to New York for the proceedings. This total includes $1,238.50 for hotels, $269.93 for flights, and $473.94 for ground transportation (Ubers). Under ICARA, a petitioner's travel expenses to attend the hearing are explicitly recoverable. *See Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013).

For these reasons, the full requested amount of $26,490.20 in costs and expenses was neither excessive nor superfluous.

III.    An Equitable Reduction is Warranted

"[22 U.S.C. section 9007(b)(3)] retains what we have previously described as the "equitable" nature of cost awards." *Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) (citing *Moore v. County of Delaware*, 586 F.3d 219, 221 (2d Cir.2009)). Even after calculating the reasonable fee, the Court retains discretion to adjust the final award based on equitable factors, including the Respondent's financial circumstances and the nature of the Petitioner's conduct. *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 80 (2d Cir. 2016). In this case, two specific equitable factors warrant a significant downward adjustment of the lodestar amount: (1) the Petitioner's documented act of physical aggression, and (2) the substantial financial disparity between the parties.

First, regarding Petitioner's conduct, the Court is guided by Second Circuit precedent holding that a petitioner's own violent actions can function as a significant equitable bar to fee recovery. In *Souratgar*, the Second Circuit established that intimate partner violence is a potent equitable factor that can render a fee award "clearly

inappropriate." *See Souratgar*, 818 F.3d 72 (2d Cir. 2016). There, the Court vacated a fee award entirely after finding the petitioner had engaged in "multiple, unilateral acts" of physical abuse, which directly precipitated the respondent's flight with the child. Analogizing to the doctrine of "unclean hands," the Circuit held that a petitioner who creates the need for litigation through their own violent conduct cannot equitably demand reimbursement; enforcing the fee-shifting statute in such a context would punish the victim rather than deter wrongful conduct. Crucially, however, the Circuit limited its holding to the specific facts of that appeal. The Circuit explicitly stated that it need not determine "what quantum of violence must have occurred to warrant a finding that fees are 'clearly inappropriate,' given the repeated violence established in the record here," leaving those determinations "to be resolved as they arise in future cases." *Id.* at 81. Furthermore, the Court emphasized that it expressed "no opinion about circumstances beyond the facts of this appeal, particularly where countervailing equitable factors are present," finding that such assessments are "better left to the district courts to develop on a case-by-case basis" to ensure they retain "broad discretion" in applying equitable principles. *Id.*

Here, the Court made a specific factual finding that Petitioner engaged in a serious act of physical aggression on December 26, 2024. *Reid*, 2025 WL 1769364, at *4. This finding of physical aggression is significant. A petitioner who resorts to physical violence bears some responsibility for the breakdown of the family unit that precipitates a Hague proceeding. However, this single confirmed incident differs materially from the systemic, repetitive violence found in *Souratgar*. There, the "clear record" of abuse was the direct and primary cause of the respondent's flight. Here, the record establishes a single incident rather than a pervasive pattern of "severe danger." Balancing these equities, the

Court finds that Petitioner's conduct warrants a meaningful penalty but not a total forfeiture of his statutory right to fees.

Second, the Court considers the financial disparity between the parties and the potential for a full fee award to cause Respondent financial ruin. The Second Circuit has long held that "when a court awards . . . attorneys' fees, it must take into account the financial circumstances of the [paying party]." *Sassower v. Field*, 973 F.2d 75, 81 (2d Cir. 1992). "[W]e agree with the district court that a respondent's inability to pay an award is a relevant equitable factor for courts to consider in awarding expenses under ICARA." *Souratgar v. Lee Jen Fair*, 818 F.3d 72, 81 (2d Cir. 2016). Courts in this District have consistently weighed the "financial circumstances of the parties" to ensure the award is not punitive. *See Haimdas v. Haimdas*, No. 09-CV-2034 (ENV)(MDG), 2011 WL 13124276, at *1 (E.D.N.Y. Aug. 29, 2011)); *Poliero v. Centenaro*, No. 09-CV-2682 (RRM)(CLP), 2009 WL 2947193, at *22 (E.D.N.Y. Sept. 11, 2009); Knigge ex rel. Corvese v. Corvese, No. 01-CV-5743 (DLC), 2001 WL 883644, at *4 (S.D.N.Y. Aug. 6, 2001).

In *Haimdas v. Haimdas*, the court exercised its equitable discretion to reduce the attorneys' fee award by 100%, denying fees entirely while awarding only necessary costs. No. 09-CV-2034 (ENV) (MDG), 2011 WL 13124276, at *1–2 (E.D.N.Y. Aug. 29, 2011). Finding that a full fee shift of over $50,000 would be a "potentially crushing burden" on the respondent—a construction worker of limited means—the court held that such an award was unjustified where the respondent had not acted egregiously and raised a non-frivolous defense. Id. Consequently, to ensure the judgment was remedial rather than punitive, the court tailored the remedy by eliminating the fee component entirely. Similarly, in *Rydder v. Rydder*, the Eighth Circuit held that a respondent's "straitened financial

circumstances" can render a full award "so excessive as to constitute an abuse of discretion." 49 F.3d 369, 373–74 (8th Cir. 1995). There, the court reduced the award from approximately $18,000 to $10,000—a reduction of roughly 44%—to achieve a "more equitable" result that balanced the statutory presumption of fees against the respondent's financial reality.

Here, the record reflects a meaningful disparity in resources. Respondent argues that she is "a single mother, residing rent-free with her parents, earning a modest salary as a school social worker." (ECF No. 136 at 2). She contends that "[i]mposing a six-figure liability would financially devastate Respondent, impair her ability to care for her children, and defeat the equitable spirit of ICARA." (*Id.*) The Court finds merit in this position. Imposing the full lodestar amount would likely operate as a crushing penalty rather than a remedial measure. Therefore, the Court finds that a partial reduction is necessary to avoid financial devastation while still respecting the statutory mandate to reimburse Petitioner's necessary expenses.

Accordingly, balancing the Petitioner's substantiated act of physical aggression against the Respondent's need for financial viability—and distinguishing this case from the total waivers granted in *Souratgar* and *Haimdas*—the Court exercises its equitable discretion to reduce the total award of fees and costs by 50%. Applying the adjusted hourly rates to the reasonable hours expended, the Court calculates the total reasonable attorneys' fees to be $100,604.50. This sum comprises $29,150.00 for Richard Min (58.3 hours at $500/hour); $21,037.50 for Michael Banuchis (56.1 hours at $375/hour); $28,625.00 for the Junior Associate (114.5 hours at $250/hour); $16,575.00 for paralegal support (132.6 hours at $125/hour); and $5,217.00 for the reasonable uncontested fees

14

of prior counsel, Clover Barrett & Associates, P.C.[1] When combined with the $26,490.20 in reasonable costs and expenses, the total recoverable amount prior to reduction is $127,094.70. Applying the 50% equitable reduction to this subtotal results in a deduction of $63,547.35. Consequently, the final judgment amount awarded to Petitioner is $63,547.35.

## CONCLUSION

For the reasons set forth above, Petitioner's motion for attorneys' fees and costs pursuant to 22 U.S.C. § 9007(b)(3) is granted in part. The Clerk of Court is respectfully directed to enter judgment in favor of Petitioner and against Respondent in the total amount of $63,547.35.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.
_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: March 27, 2026
        Brooklyn, New York

---

[1] Prior to retaining Green Kaminer Min & Rockmore LLP, Petitioner retained Clover Barrett & Associates, P.C. (ECF No. 122-1 at 5). The Court finds the uncontested hourly rate of $500 for this prior representation to be reasonable. The total reasonable charge for this representation is $5,217.00.